UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:20-cv-1212-WFJ-JSS

**JENNY T. SANTIAGO,**

       **Plaintiff,**

v.

**C. R. BARD, INC.,**

       **Defendant.**
_____/

## DEFENDANT C. R. BARD, INC.'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Defendant, C. R. Bard, Inc. ("Bard"), pursuant to Federal Rule of Civil Procedure 26, respectfully moves the Court for a Protective Order precluding Plaintiff's deposition of a Bard corporate designee as requested in the Notice to Take Oral Deposition of Defendant C. R. Bard Inc. Through Designated Witnesses ("Notice") (DE 108).[1] The Notice seeks to improperly reopen general corporate discovery, and it is cumulative and duplicative of discovery taken to date.

### STATEMENT OF FACTS

This is a complex products liability case involving transvaginal mesh ("TVM") products that has been remanded from the Bard Pelvic Repair System Products Multi-District Litigation 2187 ("Bard MDL"), before the Honorable Joseph R. Goodwin in the United States District Court for the Southern District of West Virginia.

In her Short Form Complaint, filed directly into the Bard MDL on May 7, 2013, Plaintiff Jenny T. Santiago ("Plaintiff" or "Santiago"), a resident of Lakeland, Florida, alleges she was

---

[1] A true and correct copy of the Notice is attached hereto as **Exhibit A**.

implanted with Bard's Align Urethral Support System ("Align") and Avaulta Solo Anterior and Posterior Synthetic Support System ("Avaulta") (collectively, the "Bard Devices") on May 18, 2009. [DE 1]. On January 27, 2017, the MDL Court included her case in Wave 4 of MDL 2187 via Pretrial Order ("PTO") 236. [DE 6]. Discovery closed on July 11, 2017—more specifically, PTO 236 expressly stated that the "[d]eposition deadline and close of discovery including corporate discovery" occurred on that date—over *three years ago*. *Id*. at 1.[2] Plaintiff did not seek to re-depose Bard's designated witness(es) on the topics proposed in the Notice before close of discovery in Wave 4.

On February 4, 2019, the MDL Court issued PTO 299, included this case in Wave 9, which stated: "[w]hile the court is returning cases to the active docket, *it is not the court's intention to allow a new round of pleadings or a second bite at the apple for cases already worked up in previous waves*." [DE 47]. The deposition and close of discovery deadline in Wave 9 was August 1, 2019. Yet again, Plaintiff did not seek to re-depose Bard's designated witness(es) on the topics proposed in the Notice before close of discovery in Wave 9.

The MDL Court transferred this case (and others) back to the remand Courts on September 26, 2019, stating: "[i]n particular, *the time to conduct discovery is complete*" and "[u]pon transfer, I urge the receiving court to immediately set these cases for trial." [DE 75].

Notwithstanding the MDL Court's clear statements, on August 7, 2020, Plaintiff unilaterally filed the Notice without any conferral or coordination. [DE 108]. The Notice almost

---

[2] Following completion of discovery, the case was placed on the inactive docket on November 21, 2017, after the court was advised a preliminary settlement agreement/matrix had been reached. [DE 43].

-2-

exclusively seeks general discovery, as evidenced by the Notice's request that "[t]he witness(es) shall be prepared to testify concerning:"

- "[a]ny chemical characterization and/or biocompatibility testing [Bard] performed on the actual mesh used in Plaintiff's Avaulta or Align device;"

- "[t]he operating procedures, schedule, and records maintained by [Bard] in maintenance and cleaning of any equipment used to test the chemical makeup or biocompatibility of the mesh for the Avaulta and Align during the Relevant Time Period, including the location and storage of records;"

- "[t]he operating procedures, schedule, and records maintained by [Bard] in maintenance and cleaning of any manufacturing areas where the Plaintiff's Avaulta and Align mesh was manufactured, tested, packaged, or sterilized, including the location and storage of records;"

- "[a]ny Material Safety Data Sheets ("MSDS") [Bard] received with the specific batch or batches of polypropylene resin used in Plaintiff's Avaulta and Align, or any applicable Material Safety Data Sheets [Bard was] aware of at the time of receiving said polypropylene;"

- "[a]ny evaluation done by [Bard] concerning the validity of the statement concerning use of the material in the Avaulta and Align for implantation in the human body contained in the section titled "MEDICAL APPLICATION CAUTION" on page one of the Material Safety Data Sheet for Phillips Sumika Polypropylene Company Marlex Polypropylenes, version dated January 28, 2004 and subsequent versions;"

- "[a]ny communications to [Bard] from the supplier and/or manufacturer of the polypropylene used in Plaintiff's Avaulta and Align devices indicating that the material was safe for use as a permanent medical implant;"

- "[a]ny communications to [Bard] from the supplier and/or manufacturer of the polypropylene used in Plaintiff's Avaulta and Align devices concerning use of the material in a permanent medical implant;"

- "[a]ll communications between [Bard] and the supplier and/or manufacturer of the specific batch or batches of polypropylene resin used in Plaintiff's Avaulta and Align;"

- "[a]ll communications between [Bard] and suppliers and/or manufacturers, or potential suppliers and/or manufacturers, of Marlex polypropylene during the Relevant Time Period;"

- "[a]ll communications between [Bard] and distributors or potential distributors of Marlex polypropylene during the Relevant Time Period;"

- "[a]ll documents received from suppliers and/or manufacturers of Marlex polypropylene during the Relevant Time Period;"

- "[a]ll documents received from distributors of Marlex polypropylene during the Relevant Time Period;" and

- "[a]ll testing for any of your products which utilize the Phillips Sumika Polypropylene Company Marlex Polypropylenes where the mesh material tested positive for cytotoxicity."

[DE 108 at 1, 5-7].

## LEGAL STANDARD

The broad scope of discovery is bound by numerous rules of civil procedure, including Rule 26. If the Court determines that proposed discovery meets one of the following criteria, the Court "must limit the frequency or extent of discovery":

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C). Additionally, the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding the disclosure or discovery." Fed. R. Civ. 26(c)(1).

FED. R. CIV. P. 30(a)(2)(A)(ii) also provides that leave of court must be obtained to take an update deposition if the witness has been deposed before and the parties have not stipulated to the deposition.

## ARGUMENT

**I.    THE NOTICE IMPROPERLY SEEKS TO REOPEN GENERAL DISCOVERY.**

After seven years of discovery, the MDL Court determined that all necessary general discovery was completed and thereafter remanded this matter for case-specific proceedings before this Court. Specifically, the MDL Court stated that it was remanding this case (and similar cases) to the Court, but that "*it is not the court's intention to allow a new round of pleadings or a second bite at the apple for cases already worked up in previous waves.*" [DE 47 (emphasis

added)]. The MDL Court concluded that "*the time to conduct discovery is complete*" and the case was ready to be immediately set … for trial." [DE 75 (emphasis added)].

Instead, as evidenced by the Notice, Plaintiff seeks to reopen general discovery. Specifically, she would have Bard's corporate designee sit for a deposition to testify as to: "chemical characterization and/or biocompatibility testing"; "operating procedures, schedule, and records maintained by [Bard] in maintenance and cleaning of any equipment used to test the chemical makeup or biocompatibility of the mesh"; the use of polypropylene resin and the Material Safety Data Sheets related to that product; and other topics. [DE 108 at 5-7]. But, in unilaterally noticing such a deposition, Plaintiff fails to acknowledge—even though she herself stated it to this Court—that "[s]even years of extensive discovery occurred in this case prior to the transfer from the MDL, including *corporate discovery*" and "[a]fter this case being subjected to seven years of litigation and very specific scheduling orders with specific deadlines—where it was made clear to the parties that all discovery must be completed by August of 2019 – it would be unfair, inefficient, and unnecessary to give either party a second bite at the discovery apple." [DE 104 at 2 (emphasis added)].

Plaintiff has also failed to comply with FED. R. CIV. P. 30(a)(2)(A)(ii) which provides that leave of court must be obtained to take an update deposition if the witness has been deposed before and the parties have not stipulated to the deposition. Similarly, PTO 40 expressly provides that "[a]bsent exigent circumstances, as a general rule, no witness should be deposed in this MDL proceeding on the same subject more than once. A party seeking to take a second deposition of a witness shall provide the opposing party its basis for an exception. Second depositions on new subject matter shall be permitted only upon consent of the parties or an Order

of this Court issued for good cause shown." [PTO #40, ¶ D.2]. Plaintiff here has not identified any specific deponents they seek to re-depose, have not explained what additional information such individuals may possess relating to the Devices, and did not show any good cause that would merit an exception to FED. R. CIV. P. 30(a)(2)(A)(ii) or PTO 40, which bars duplicate depositions. Indeed, as discussed in further detail below, nearly 50 Bard corporate witnesses have already been deposed in the MDL and many for multiple days on these same topics.

Plaintiff's failure to make such a showing is not surprising, as recently as June 2020, Plaintiff tacitly conceded, in her proposed order provided to this Court, that the only depositions that should be allowed are that of "Plaintiff's friends and family members requested prior to the discovery completion date," relying on PTO 299. *See* Plaintiff's Status Report and Proposed Discovery Plan. [DE 104-7 at 1]. Plaintiff further proposed the Court to order that, "[n]o additional depositions will be conducted in this case other than the 'friends and family' depositions ... without agreement of both parties or good cause shown to the Court." *Id*. at 2. Plaintiff suggested this because, as *she stated*, "both parties already had an opportunity to conduct discovery in the MDL prior to the discovery cut-off." *Id*. at 3.

Plaintiff's own words illustrate why she should not be permitted to reopen general corporate discovery as requested in the Notice, and the Motion for Protective Order should be granted. Plaintiff may nevertheless attempt to back-peddle and claim that this is a case-specific deposition as opposed to impermissible general corporate discovery. But, that argument also falls flat because the law firm that represents Plaintiff in this case—Wagstaff & Carmell, LLP—cross noticed this deposition in two other TVM cases remanded from the Bard MDL that are currently pending in the United States District Court For The Northern District of Illinois (*Christine*

-7-

*Wheeler and Douglas Wheeler v. C. R. Bard, Inc.*; Case No. 1:19-cv-08273, at DE 147) and the United States District Court For The District of Colorado (*Janet Thomas and Edward Thomas v. C. R. Bard, Inc.*; Case No. 1:19-cv-02898-RBJ-KMT, at DE 86). To be plain, a corporate witness deposition that is noticed/cross-noticed to testify on 16 topics and 18 categories of documents, in 3 separate cases pending in different jurisdictions and involving different facts and products, cannot, by definition, be a case-specific deposition. There is no basis in the Notice or in the record that the MDL did not sufficiently and exhaustively cover each of the topics necessary for this case to proceed to limited *case-specific* updated discovery that was not ripe or available in the MDL and trial before this Court. To permit Plaintiff to reopen topics that already have been addressed would circumvent the purpose of the MDL proceeding and directly contradict the MDL Court's instruction that parties not receive another round of general discovery. Therefore, this Court should quash the Notice and enter a protective order.

**II.    THE NOTICE SEEKS TESTIMONY THAT IS CUMULATIVE AND DUPLICATIVE.**

The Notice requests that a Bard corporate designee testify to 16 subject matters and produce 18 categories of documents that have been addressed extensively in the MDL proceeding and are part of the record. To date, in the Bard MDL No. 2187, Bard has applied over 2,000 search terms—including terms related to the Bard Devices—against its collected data and responded to at least 12 different sets of general document requests. Bard has produced nearly 11 million pages of documents from more than 110 Bard custodians, and nearly 50 Bard corporate witnesses have been deposed, many for multiple days. All of these documents were previously produced to plaintiffs in the MDL. Moreover, numerous depositions were taken in the MDL which cover the topics in the Notice regarding the materials used to manufacture the Devices,

including Bard's corporate witnesses, as well as third-parties, Frank Zakrzewski, Procurement Operations Manager at Chevron Phillips Chemical, LP/ Philips Sumika Polypropylene Company and Michael Barnette, Vice President of Red Oak Sales. Mr. Zakrzewski specifically testified regarding the Material Safety Data Sheet for Phillips Marlex HGX-030-01 polypropylene resin and Mr. Barnette has testified regarding the supply relationship with Bard for polypropylene monofilament.

Courts routinely preclude parties from taking depositions that are unnecessarily duplicative or cumulative. *Beaulieu v. Bd. of Tr. of Univ. of W. Fla.*, No. 3:07CV30/RV/EMT, 2007 WL 9734886, at *6 (N.D. Fla. Oct. 4, 2007) ("the topics identified by Plaintiff should not have been previously covered by other discovery," and explaining that Plaintiffs are not entitled to "seek other information that she already has by virtue of responses to other discovery devices"); *accord Baine v. General Motors Corp.*, 141 F.R.D. 332, 336 (M.D. Ala. 1991) (quashing deposition notices where testimony would be duplicative and cumulative).

Here, the MDL Court addressed each of the subjects as to which Plaintiff seeks to depose a Bard corporate designee. For example, a number of the subjects as to which Plaintiff seeks testimony concern Bard's use of polypropylene resin, the MSDS received with that product, and biocompatibility. [DE 108 at 5-7]. But, Plaintiff's Notice fails to acknowledge that her designated general expert on materials science and engineer, Anthony B. Brennan, Ph.D., has prepared numerous reports throughout this MDL and seeks to opine on the very subjects for which Plaintiff now claims she has no discovery.[3] Moreover, Plaintiff specifically relied upon general corporate testimony and evidence concerning Bard's use of polypropylene resin, the

---

[3] A true and correct copy of Plaintiff's Designation and Disclosure of General and Case-Specific Expert Witnesses, dated May 12, 2017, is attached hereto as **Exhibit B.**

MSDS received with that product, and biocompatibility in the MDL record to oppose Bard's Motion for Summary Judgment on Plaintiff's claim for punitive damages in this case. [DE 70 at 9-11]. If there was a true lack of information on these topics, the MDL Court, Plaintiff's counsel, or her expert, Dr. Brennan, would have addressed it with the MDL Court during the last seven years. Instead, the record illustrates that each of the subjects set forth in the Notice has been extensively addressed in this litigation.

As the Notice requests deposition testimony that is undoubtedly cumulative and duplicative of testimony and discovery taken during the MDL, of which Plaintiff has access and the ability to present at trial, this Court should be quash and enter a protective order.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), the undersigned certify that they have conferred with counsel for Plaintiff and are authorized to represent that Plaintiff opposes the relief requested in this Motion for Protective Order. However, Plaintiff does agree to stay the deposition and that it will not go forward as currently noticed on September 21, 2020 pending a ruling by the Court on the instant Motion for Protective Order and Bard's objections to the Notice. Moreover, Plaintiff agrees that if the Court denies Bard's Motion in whole or in part, that the deposition will be re-noticed on a mutually agreeable date, time and location.

## CONCLUSION

WHEREFORE, Bard respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 26, to quash the Notice and issue a protective order. Bard also respectfully requests that the Court accept the parties' stipulation to stay the deposition and that it will not go forward as currently noticed on September 21, 2020 pending a ruling by the Court on the instant Motion

for Protective Order and Bard's objections to the Notice and that if the Court denies Bard's Motion in whole or in part, that the deposition will be re-noticed on a mutually agreeable date, time and location, and for any further relief that this Court deems just and proper.

September 4, 2020

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
*Counsel for Defendant C. R. Bard, Inc.*
777 South Flagler Drive, Suite 300 E
West Palm Beach, FL 33401
Telephone:     (561) 650-7939
Facsimile:      (561) 655-6222

/s/ *Robert R. Kane III*

Robert Russell Kane, III
Florida Bar No. 99488
Email: kaner@gtlaw.com
Secondary Email: flservice@gtlaw.com

Jason H. Okleshen
Florida Bar No.: 496170
Email: okleshenj@gtlaw.com

C. Wade Bowden
Florida Bar No. 90735
Email: bowdenw@gtlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2020, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

                                                */s/ Robert R. Kane III*
                                                ROBERT R. KANE III